# UNTIED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEFFREY THOMAS,
     Petitioner,

                                    CIVIL ACTION NO.
     v.                             3:01cr179 (SRU)

UNITED STATES OF AMERICA,
     Respondent.

## RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On January 4, 2002, Jeffrey Thomas pled guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base and 500 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) and (b)(1)(B)(ii).  On April 18, 2002, I sentenced Thomas principally to 262 months' imprisonment.[1]  On March 12, 2003, Thomas filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.  For reasons that follow, his motion is denied.

To obtain relief under 28 U.S.C. § 2255, Thomas must demonstrate that his sentence "was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  Thomas's papers raise nine grounds for potential relief, all under the guise of ineffective assistance of counsel.  He alleges that defense counsel rendered ineffective assistance by: (1) failing to file an appeal despite Thomas's request to do so; (2) advising Thomas to enter into a plea despite the fact that the Government's evidence was insufficient to establish a conspiracy; (3) waiving Thomas's rights under the Speedy Trial Act; (4) failing to seek dismissal of the

---

[1] Over the Government's objection, I granted Thomas's counsel's motion for a downward departure from the thirty-years-to-life guideline range.  I departed from a Criminal History Category IV to a Criminal History Category III and sentenced Thomas at the bottom of the resulting range, 262 to 327 months.

indictment as defective for using the term "detectable amount" of cocaine base; (5) failing to

seek dismissal of the indictment as defective for failure to allege interstate commerce as an

element of the charged offense; (6) failing to seek dismissal of the indictment for lack of subject

matter and personal jurisdiction under the interstate commerce clause; (7) failing to seek

dismissal of the indictment because of the Government's selective and vindictive prosecution of

Thomas; (8) failing to challenge the jurisdiction of the Court because Title 21 was not enacted by

Congress into "positive law;" and (9) failing to explain to Thomas that Thomas had a right to a

jury trial and thus entered into his guilty plea involuntarily and unknowingly.

**I.    Ineffective Assistance of Counsel**

    A.    <u>Legal Standard</u>

The Supreme court in *Strickland v. Washington*, 466 U.S. 668 (1984), noted that the

"right to counsel plays a crucial role in the adversarial system embodied in the Sixth

Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the

ample opportunity to meet the case of the prosecution to which they are entitled." *Id.* at 685

(internal quotations omitted). "The Sixth Amendment recognizes the right to assistance of

counsel because it envisions counsel's playing a role that is critical to the ability of the

adversarial system to produce just results. . . .  For that reason . . . the right to counsel is the right

to effective assistance of counsel. *Id*. at 686 (internal quotations omitted). "Counsel can deprive

a defendant of the right to effective assistance, simply by failing to render 'adequate legal

assistance.'" *Id.* (quoting *Cuyler v. Sullivan*, 466 U.S. 335, 344 (1980)).

The *Strickland* Court set forth a two-pronged test to determine whether a lawyer's

representation was constitutionally ineffective. "[I]n order to prevail on an ineffective-

assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice. Both prongs of this test must be met." *United States v. Jones*, 455 F.3d 134, 151 (2d Cir. 2006).

In applying *Strickland*, courts must resist a natural temptation to play Monday-morning quarterback. *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991). "It is not our task to call the plays as we think they should have been called." *Id.* (internal quotations omitted). To the contrary, courts must "evaluate the conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, and "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *Kieser v. New York*, 56 F.3d 16, 18 (2d Cir. 1995) (*per curiam*) (internal quotations omitted).

B.     Claim One: Failure to Appeal

Thomas claims that defense counsel was ineffective because he failed to file a notice of appeal despite Thomas's request to do so. Thomas later modified that claim in his Response to the Government's Memorandum in Opposition [hereinafter "Thomas Response"] to his section 2255 petition and alleges that defense counsel persuaded Thomas "to enter into the plea agreement and waiv[e] his constitutional right to appeal" and furthermore "told movant that he waived all his [r]ights by entering into the plea agreement." Thomas Response at 5. Joseph Mirsky, Thomas's defense counsel, has filed an affidavit with the court denying Thomas's allegations.[2] Thomas's plea agreement letter stipulates that both parties reserve their rights to

_____

[2] Mirsky states, "[a]t no time during or after these proceedings did Mr. Thomas instruct me to, or request that I file a notice of appeal. In fact, Mr. Thomas never raised the issue of an appeal with me and I do not believe that I had any conversations or correspondence with him on

appeal Thomas's sentence.  Exhibit A to Government's Response.

Thomas requests in his Response that the Court grant a hearing to determine whether defense counsel rendered ineffective assistance by failing to appeal Thomas's sentence and by wrongly advising Thomas about his appeal rights.  "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C § 2255.  Indeed, because there are opposing affidavits at issue, which may entitle Thomas to relief, there is a presumption that a hearing must be held to make relevant factual determinations.  *See*, *e.g.*, *Machibroda v. United States*, 368 U.S. 487, 494 (1962) (citing *United States v. Hayman*, 342 U.S. 205, 220 (1952) ("We think the District Court did not proceed in conformity with the provisions of 28 U.S.C. § 2255, when it made findings on controverted issues of fact without notice to the petitioner and without a hearing.")).  I need not hold a hearing to determine the disputed issue, however, because assuming, without deciding, that Thomas's counsel rendered ineffective assistance by failing to appeal and/or providing wrong advice about his appeal rights, a hearing is unnecessary because there are no non-frivolous grounds for appeal available to Thomas.

Thomas claims there are two grounds for appeal.  First, concerning his conviction, Thomas claims he "did not knowingly and voluntarily admit that cocaine base involved in the offence as charged constituted 'crack' within the enforced provision of the U.S. Sentencing Guidelines."  Thomas Response at 7-8.  Second, concerning his sentence and relying on *Blakely*

---

that topic."  Government's Response to *pro se* Motion 6/20/03 at 13 [hereinafter "Government's Response"].

*v. Washington*, 542 U.S. 296 (2004), Thomas claims "the District Court infringed on defendant's Sixth Amendment Right to a jury trial by imposing a sentence of 262 months and 15 years supervised release which was based on facts neither pled by the defendant nor found true by a jury beyond reasonable doubt." Thomas Request for Judicial Notice of Adjudicative Facts, 1/14/05, at 6. Both of the asserted grounds for appeal are meritless.

The record clearly establishes that Thomas knowingly and voluntarily pled guilty to the aforementioned charges. The plea agreement letter, which Thomas read and signed, uses the phrase "cocaine base/crack cocaine" five times over the course of six pages.[3] Exhibit A to Government's Response. Moreover, during Thomas's change of plea proceeding, he was informed a number of times about the nature of the charges against him: (1) when the Assistant U.S. Attorney described the charge and included the term "crack cocaine," 1/4/02 Plea Tr. at 7-8; (2) when the Assistant U.S. Attorney reviewed the plea agreement letter and stated, "charging him with conspiracy to possess with the intent to distribute 50 grams or more of cocaine base, crack cocaine . . . ," *id.* at 16; (3) when the Assistant U.S. Attorney discussed guideline calculations and twice mentioned "crack cocaine," *id.* at 22-23; and (4) when the Assistant U.S. Attorney described the elements of the charge and the evidence against Thomas and used the phrase "crack-cocaine" seventeen (17) times, *id.* at 29-33. In addition, Thomas assured me that he understood the nature of the charges.[4] The extensive plea colloquy describing the nature of

---

[3] "Cocaine base/crack cocaine" is explicitly used in the sentencing guidelines calculation section of the plea agreement letter. Exhibit A to Government's Response. It is precisely the sentencing guidelines prescribed by offenses involving "crack cocaine" to which Thomas objects.

[4] I engaged in the following dialogue with Thomas:
THE COURT: Okay. So am I correct that you and couple other people at least got together and were working together to possess and to distribute cocaine and cocaine base?

the charges against Thomas, coupled with the signed plea agreement, demonstrate that Thomas

entered into his plea knowingly and voluntarily and thus any appeal on that ground would have

failed.

Second, Thomas asserts in his Request for Judicial Notice of Adjudicative Facts that the

court illegally imposed his sentence under *Blakely*.  That claim fails.  The Second Circuit has

noted that "*Blakely* itself stated nothing about its retroactivity.  To date, the Supreme Court has

not, in any other case, announced *Blakely* to be a new rule of constitutional law, nor has the court

held it to apply retroactively on collateral review."  *Carmona v. United States*, 390 F.3d 200, 202

(2d Cir. 2004) (*per curiam*).  Thomas was sentenced on April 18, 2002 and judgment entered on

May 2, 2002.  Because he did not appeal, the judgment became final in his case well before June

24, 2004, the date the Supreme Court decided *Blakely*.  Thus, because *Blakely* does not apply

retroactively and the final disposition of Thomas's case predates *Blakely* by approximately two

years, he cannot rely on *Blakely* to appeal his sentence.

Even if properly brought, however, Thomas's *Blakely* claim would fail on the merits.  A

"defendant's Sixth Amendment right 'is implicated whenever a judge seeks to impose a sentence

that is not solely based on facts reflected in the jury verdict *or admitted by the defendant*.'"

---

THE DEFENDANT: Yeah.
THE COURT: Crack?
THE DEFENDANT: (Nodding head affirmatively)
1/4/02 Plea Tr. at 35.

THE COURT: And you in fact participated in the possession and the sale of both cocaine
and crack cocaine?
THE DEFENDANT: Yes.
*Id.* at 36.

*United States v. Reifler*, 446 F.3d 65, 116 (2d Cir. 2006) (quoting *United States v. Booker*, 543 U.S. 220, 232 (2005)).  The logic of *Blakely* thus applies, essentially, when a defendant is sentenced based upon facts the sentencing judge finds at sentencing that change the statutory sentencing range applicable to the defendant.  I found no such facts in this case.  Instead, I sentenced Thomas based upon facts to which he admitted in his plea agreement and during his plea colloquy.  As such, Thomas's *Blakely* claims fails on the merits.  *See United States v. Monsalve*, 388 F.3d 71, 73 (2d Cir. 2004) (*per curiam*) (holding that a sentence is not unconstitutional under *Blakely* if it is based upon certain facts the defendant admits in a plea agreement, regardless if those admissions are later contradicted by statements made during a plea colloquy).

Because there were no grounds for appeal that Thomas's counsel could have reasonably presented as non-frivolous, Thomas suffered no prejudice even assuming that his counsel's performance fell below an objective standard of reasonableness when he failed to appeal. Therefore, Thomas cannot meet the second prong of the *Strickland* test with respect to his first claim.

C.    Claim Two: Sufficiency of the Evidence

Thomas next claims that counsel rendered ineffective assistance by advising him to enter into a guilty plea where the Government's evidence was insufficient to establish a conspiracy, but rather reflected a "buyer/seller" relationship.

"Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  *Hill v.*

-7-

*Lockhart*, 474 U.S. 52, 56 (1985). "A guilty plea cannot be attacked on the basis of inadequate

legal advice unless counsel was not a reasonably competent attorney and the advice was outside

the range of competence required of counsel in criminal cases." *Fellouris v. United States*, 860

F. Supp. 97, 100 (S.D.N.Y. 1993) (citing *Strickland*, 466 U.S. at 687).

Here, it is clear that counsel did not act unreasonably by advising his client to enter into a

guilty plea. "In order to sustain a conviction under 21 U.S.C. § 846, the evidence must

demonstrate that there existed an agreement or understanding between or among two or more

persons to possess cocaine with the intent to distribute it and that a particular defendant

knowingly became a member of the conspiracy." *United States v. Murgas*, 177 F.R.D. 97, 101

(N.D.N.Y. 1998) (citing *United States v. Martino*, 759 F.2d 998, 1002-04 (2d Cir. 1985)).

"[W]ithout more, the mere buyer-seller relationship is insufficient to establish a conspiracy."

*United States v. Hawkins*, 2007 U.S. Dist. LEXIS 43502, *20 (D. Conn. 2007). A buyer-seller

relationship can be some evidence of a conspiracy, however, and can support a conspiracy charge

if accompanied by other evidence of additional conduct to establish the fact that a defendant

actually joined a given conspiracy. *See id*. Additionally, "the existence of and participation in a

conspiracy with the requisite criminal intent may be established through circumstantial

evidence." *United States v. Tutino*, 883 F.2d 1125, 1129 (2d Cir. 1989) (internal quotations

omitted).

The evidence available to the government overwhelmingly establishes Thomas's guilt on

the conspiracy charge and refutes his buyer/seller defense. If the case proceeded to trial, the

government was prepared to offer the following evidence: testimony of law enforcement and

civilian witnesses; evidence of undercover buys from Thomas from two undercover officers and

from coconspirators; evidence from court authorized seizures; and court authorized interceptions of communications over a cellular phone used primarily by Thomas. 1/4/02 Plea Tr. at 29-33. Specifically, the evidence would have demonstrated that "Mr. Thomas obtained cocaine from various sources, that being powder cocaine, including his half brother, Wallace Best and with assistance of persons including Gerardo Algarin, distribute[d] crack cocaine, cocaine base and others, and including coconspirators Shamar Swinton and Scott Lambert." *Id.* at 30. Defense counsel, being faced with a great deal of evidence against his client, acted well within the range of competence required of a criminal defense attorney when he advised Thomas to accept a guilty plea. Therefore, because counsel's actions do not fall below an objective standard of reasonableness, Thomas's second *Strickland* claim must fail.

     D.     <u>Claim Three: Waiver of Rights Under Speedy Trial Act</u>

     Thomas claims that defense counsel rendered ineffective assistance when he waived Thomas's rights under the Speedy Trial Act. Thomas claims the waiver provided the Government additional time to supercede the indictment with more serious charges.

     "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation and citation omitted). As a preliminary matter, I granted defendant's Motion for Extension of Time in Which to File Motions [Doc # 21] on September 14, 2001 [Doc # 21-1]. Counsel submitted that he needed additional time in order to review discovery materials, specifically wiretap information, that would be necessary to Thomas's defense [Doc # 21]. Defense counsel thereafter submitted a Waiver of Speedy Trial

[Doc # 29] in order to have additional time to evaluate ongoing discussions between the defendant and the Government. Thomas signed this waiver, which was subsequently granted on October 19, 2001 [Doc # 29-1].

It is not unreasonable for a defense attorney to request more time to review discovery materials, especially those including extensive wiretap information, to best prepare for his client's defense or to conduct discussions with the government. Indeed, "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance and a court may not use hindsight to second-guess counsel's tactical choices." *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (internal citations and quotations omitted). Because the request for additional time and the waiver of Thomas's Speedy Trial Act rights constitute reasonable trial strategy, Thomas has not met his burden of proving that defense counsel rendered ineffective assistance. Moreover, even if Thomas could establish that prong, he cannot show he was prejudiced by his counsel's decision. Specifically, he cannot show that the government would not have superseeded had he not waived his rights under the Speedy Trial Act. Nor can he show that, had the indictment been dismissed on Speedy Trial Act grounds, the government would not have re-filed the charges against him. Thomas's third *Strickland* claim thus fails.

E.    Claim Four: Indictment Defective for Using Term "Detectable Amount" of Cocaine Base

Thomas claims that defense counsel was ineffective by failing to seek dismissal of the indictment for using the term "detectable amount" of cocaine base. Thomas further argues in his petition that "Congress did not use[] the 'detectable amount' words in the offense involving

crack or cocaine base for a reason, therefore, the charged offense was one created by the prosecution, which clearly striped [sic] any jurisdiction to this court." Thomas's claim is without merit.

An indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Furthermore, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.* (quoting *United States v. Stavroualkis*, 952 F.2d 686, 693 (2d Cir. 1992)).

Thomas incorrectly reads the statute, 21 U.S.C. § 841(b)(1)(A)(iii). That section sets forth the penalties for a violation of subsection 841(a) involving "50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base." Upon reading that section it is necessary to refer back to clause (ii), which proceeds to describe substances containing a *detectable amount* of cocaine and other prohibited substances. Any reasonable defense attorney well versed with this section of the United States Code would not seek a dismissal of the indictment on this ground because it is entirely frivolous and without merit. Therefore, Thomas has failed to meet his burden that counsel's actions fell below an objective standard of reasonableness. Accordingly, that Strickland claim must fail.

F.    Claims Five and Six: Defective Indictment Under Interstate Commerce Clause

_____Thomas furthermore argues that defense counsel rendered ineffective assistance of counsel by, (1) failing to seek dismissal of the indictment as defective for failure to allege interstate commerce as an element of the charged offense and (2) failing to seek dismissal of the indictment for lack of subject matter and personal jurisdiction under the interstate commerce clause.  These arguments are plainly frivolous.

"A substantial effect on interstate commerce is not an element of § 841(a) or § 846." *United States v. Anguiano-Llerenas*, 2003 U.S. Dist. LEXIS 3337, *10 (N.D. Tex. Mar. 3, 2003); *see United States v. Ortega-Amaro*, 126 Fed. Appx. 369, 370-71 (9th Cir. 2005); *see United States v. Walters*, 163 Fed. Appx. 674, 684-85 (10th Cir. 2006).  Therefore, Thomas's counsel's failure to raise an argument to the contrary was not unreasonable, nor did it cause Thomas any prejudice.

Thomas also argues that because all alleged acts occurred within Connecticut and thus did not affect interstate commerce, this court lacked jurisdiction over the alleged offense.  The Supreme Court has expressly held, however, "that Congress may regulate activity that occurs wholly within a particular state if the activity has a sufficient nexus to interstate commerce." *United States v. Genao*, 79 F.3d 1333, 1335 (2d Cir. 1996) (citing *Fry v. United States*, 421 U.S. 542, 547 (1975)).  Indeed, Congress has found that narcotics trafficking, even if wholly occurring intrastate, represents a type of activity that substantially affects interstate commerce.  *See id.* at 1335- 36 (citing 21 U.S.C. § 801) ("Federal control of intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.").  As such, circuit courts of appeal that have considered whether section 846 is

constitutional under the Commerce Clause have generally "upheld the Controlled Substances Act in the face of Commerce Clause challenges." *Id.* at 1336; *see*, *e.g.*, *United States v. Leshuk*, 65 F.3d 1105, 1112 (4th Cir. 1995); *United States v. Bernard*, 47 F.3d 1101, 1103 (11th Cir. 1995) (*per curiam*).  Likewise, courts that have addressed the same question with regards to section 841(a)(1) have similarly concluded that this section represents a valid exercise of the commerce power.  *Proyect v. United States*, 101 F.3d 11, 13 (2d Cir. 1996) (*per curiam*); *see*, *e.g.*, *United States v. Edwards*, 98 F.3d 1364, 1369 (D.C. Cir. 1996); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir. 1996); *United States v. Lerebours*, 87 F.3d 582, 584-85 (1st Cir. 1996).

District courts have original jurisdiction over all criminal matters arising under the laws of the United States, specifically including drug cases.  18 U.S.C. § 3231; *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005) ("a federal district court plainly possesses subject-matter jurisdiction over drug cases.").  "Furthermore, Congress has authority under the Commerce Clause to enact criminal laws such as 21 U.S.C. §§ 841 and 846.  *Hawkins v. United States*, 2006 U.S. Dist. LEXIS 60531, *11 (D. Conn. 2006) (citing *United States v. Ekinci*, 101 F.3d 838, 844 (2d Cir. 1996)).  "Thus, the judicial power of the district court, which Congress established pursuant to the Constitution, extends to 21 U.S.C. §§ 841 and 846." *Id.*  Because the district court has jurisdiction over the criminal charges presented in the indictment, Thomas's claim is without merit and counsel did not render ineffective assistance by failing to raise such an argument.

G.    Claim Seven: Government's Selective and Vindictive Prosecution

Thomas next claims that defense counsel rendered ineffective assistance by failing to seek dismissal of the indictment because of the Government's selective and vindictive prosecution of

-13-

him.  Thomas argues that the Connecticut State Police should have arrested him as soon as the

first violation occurred on July 16, 2001.

"The Supreme Court has . . . held that in selective prosecution cases 'the presumption of

regularity supports [prosecutors'] prosecutorial decisions and in the absence of clear evidence to

the contrary, courts presume that they have been properly discharged of their official duties.'"

*United States v. Jibori*, 149 F.3d 125, 127 (2d Cir. 1998) (*per curiam*) (quoting *United States v.*

*Armstrong*, 517 U.S. 456, 465 (1996)).  Thomas's allegation that the police should have arrested

him upon his first violation of law does not constitute clear evidence to refute the prosecutor's

decisions.  Indeed, "[o]nce probable cause exists . . . law enforcement is legitimately empowered,

but not required, to arrest the suspect."  *Buie v. Sullivan*, 923 F.2d 10, 13 (2d Cir. 1990); *see also*

*Hoffa v. United States*, 385 U.S. 293, 310 (1966) ("There is no constitutional right to be arrested .

. . Law enforcement officers are under no constitutional duty to call a halt to a criminal

investigation the moment they have the minimum evidence to establish probable cause . . . .").

"A vindictive motive for a prosecution 'will be found where there is direct evidence of

actual vindictiveness, or a rebuttable presumption of vindictive motive may arise under certain

circumstances.'"  *United States v. Koh*, 199 F.3d 632, 639 (2d Cir. 1999) (quoting *United States*

*v. White*, 972 F.2d 16, 19 (2d Cir. 1992)).  The Second Circuit Court of Appeals has "previously

held that the presumption of prosecutorial vindictiveness generally does not arise in the pretrial

setting."  *Id.*  Thus, in order to prevail on his vindictive prosecution claim Thomas "must show

that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to

bring the charges by another with animus such that the prosecutor could be considered a 'stalking

horse' and (2) he would not have been prosecuted except for the animus" *Id.* at 640 (internal

-14-

quotations omitted).

Thomas has failed to meet either prong of that test.  First, Thomas does not demonstrate that the prosecutor harbored any specific animus towards him.  Assuming, for argument's sake, that the prosecutor did harbor a genuine animus towards Thomas, given the vast amounts of evidence against Thomas, he would have been subject to prosecution regardless of the prosecutor's subjective feelings.  Because Thomas cannot conclusively demonstrate that he was the victim of selective and vindictive prosecution, defense counsel did not render ineffective assistance by failing to raise such claims in order to dismiss the indictment.  Any reasonable counsel would have recognized the same.  Accordingly, Thomas's seventh claim must fail.

H.     Claim Eight: Improper Jurisdiction Because Title 21 Was Never Enacted into "Positive Law"

Thomas's eighth claim asserts that defense counsel rendered ineffective assistance of counsel by failing to challenge the jurisdiction of the court.  Specifically, Thomas contends that Title 21 was not enacted by Congress into "positive law."  To the extent Thomas claims that his conviction is void because Title 21 was not enacted into "positive law," that claim is facially meritless.  *Goldsby v. United States*, 152 Fed. Appx. 431, 441 (6th Cir. 2005) ("the fact that Title 21 has not yet been revised, codified, and enacted into positive law in accordance with the legislative agenda noted in the preface to the United States Code does not render the substantive law it records a nullity.") (internal quotations omitted); *Wilson v. United States*, 1991 U.S. App. LEXIS 26092 (10th Cir. 1991) (same); *United States v. Schultz*, 2007 U.S. Dist. LEXIS 71661, *6 (D. Minn. 2007) (same); *Buford v. United States*, 2006 U.S. Dist. LEXIS 84952 (D. Tenn. 2006) (same); *see also United States v. Almonte-Nunez*, 1999 U.S. App. LEXIS 32776, *2 (D.C.

Cir. 1999) (quoting *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985), for the proposition that

"Congress's failure to enact a title into positive law has only evidentiary significance and does

not render the underlying enactment invalid or unenforceable."). Thus, because there was no

basis to challenge the court's jurisdiction based on Thomas's argument, Thomas cannot show

that counsel's performance was objectively unreasonable. Accordingly, Thomas cannot meet his

burden under *Strickland* and his eighth claim must also fail.

      I.      Claim Nine: Notice of the Right to Jury Trial

      Thomas's final claim is that defense counsel rendered ineffective assistance because

Thomas did not understand that he had a right to a jury trial and thus entered into his guilty plea

involuntarily and unknowingly. This claim, too, is without merit.

At the plea colloquy I advised Thomas of the various rights that he would be waiving by

entering into a guilty plea. I engaged in the following dialogue with Thomas:

> THE COURT: I want to go through with you various rights that you would be giving up if
> you plead guilty. All right? So please listen carefully. Again if you have any questions
> let me know.
>
> THE DEFENDANT: Okay . . . .
>
> THE COURT: So even if you're guilty, that you have a choice. You can plead guilty, in
> which case there is just going to be a finding of guilt, or you can plead not guilty, all
> right? And if you plead not guilty, you're entitled to a speedy public trial in front of a
> jury with the assistance of your lawyer and the charges against you are going to have to be
> proven by the government, as I said, beyond a reasonable doubt using competent
> evidence. All right? And if the government fails to prove that you're guilty beyond a
> reasonable doubt, the jury is going to have a duty to find you not guilty. Do you
> understand?
>
> THE DEFENDANT: Yes.

1/4/03 Plea Tr. at 8-10.

THE COURT: . . . And if you plead guilty and I accept your plea, you're going to be giving up your constitutional right to a trial and all of the other rights that come along with a trial that I just described. There won't be any trial of any kind, won't be any witnesses. I'm simply going to enter a finding of guilt based upon your plea, do you understand that?

THE DEFENDANT: Yes.

*Id.* at 11-12.

THE COURT: I want to be sure you understand, Mr. Thomas, that if you plead guilty today, you're going to be giving up your right to have a jury determine how much the drugs weighed, okay? So the amounts of these drugs are important to the statute and to the punishment, do you understand that?

THE DEFENDANT: Yeah. . . .

THE COURT: Okay, and if you went through a trial a jury would decide whether it was 50 grams or 500 grams, okay? You understand that?

THE DEFENDANT: Yeah.

THE COURT: But if you plead guilty today a jury is not going to make that decision, okay?

THE DEFENDANT: Yeah.

*Id.* at 21.

Thomas's plea agreement further reiterated the point that by pleading guilty he would give up his "right to be tried by a jury with the assistance of counsel." Exhibit A to Government's Response. The plea agreement bears Thomas's signature and indicates that he both read and understood its terms. Furthermore, at the plea colloquy I confirmed Thomas's understanding of the plea agreement letter:

THE COURT: Mr. Thomas, I've just been handed a seven page letter. It's dated December 19th, 2001, and that appears to be your signature on the last page. Did you sign the document?

-17-

THE DEFENDANT: Yes.

THE COURT: Okay, did you have a chance to read this letter before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you have a chance to talk to Mr. Mirsky about it before you signed it?

THE DEFENDANT: Yes.

THE COURT: And you understand what it says?

THE DEFENDANT: Yes.

*Id.* at 15.

The record plainly refutes Thomas's contention he was not aware that by pleading guilty he waived his right to a jury trial. Under the penalty of perjury Thomas stated to this court that he read the plea agreement and understood its terms. At the change of plea proceeding, defense counsel informed the court that he had left the plea agreement with Thomas and on a number of occasions returned to speak with Thomas to ensure that he understood everything that the plea entailed. *Id.* at 13.

Nevertheless, even assuming Thomas's counsel did not fully explain that, by pleading guilty, Thomas would be foregoing his right to a jury trial, I informed Thomas of that fact, in detail, at his plea colloquy, and he signed a plea agreement that also clearly explained that fact. As such, any failure of Thomas's counsel to fully explain to Thomas that he was waiving his right to trial caused him no prejudice. Accordingly, his *Strickland* claim must fail.

**II. Conclusion**

For the foregoing reasons, Thomas's ineffective assistance of counsel claims are without merit. His motion to vacate, set aside or correct his sentence is **DENIED**. A certificate of

appealability shall not issue.  The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 24th day of January 2007.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge